**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHARLES CLAPSADDLE and TELECOM
CONSULTING SERVICES, INC.,

    Plaintiffs,

          v.                              No. CIV 97-1504 BB/LCS

TELSCAPE INTERNATIONAL, INC. and
E. SCOTT CRIST,

    Defendants.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants' motions to dismiss or, in the alternative, for a more definite statement. (Docs. 15, 26) Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motions should be DENIED.

**I. Summary of Case**

This action is one for declaratory relief and money damages, based on claims of fraud, breach of contract, unjust enrichment, federal securities fraud, and violation of two Texas statutes concerning securities fraud and stock transactions fraud. Defendants claim dismissal is in order for a number of different reasons. First, they argue Plaintiffs have not stated a claim under the federal securities laws, because the transaction about which Plaintiffs complain was not one "in connection with" the purchase or sale of a security. Second, they claim Plaintiffs have not pleaded their claims with the particularity required by the Rule 9(b) of the federal rules of civil procedure and the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1). Third, they claim this Court has no

personal jurisdiction over them and cannot address Plaintiffs' state-law claims. Finally, they maintain Plaintiffs have not pleaded actionable claims under the Texas statutes.

In addressing the motions to dismiss, this Court is required to accept as true all well-pleaded facts alleged in Plaintiffs' complaint. See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court does not, however, accept conclusory allegations as true, although a party's intent may be alleged generally. Phelps, 886 F.2d at 1269-70; Cayman Exploration Corp. v. United Gas Pipe Line, 873 F.2d 1357, 1359 (10th Cir. 1989). This Court will dismiss the complaint, or claims contained in the complaint, only if it appears that Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. Phelps, 886 F.2d at 1266. The Court will consider Defendants' arguments in light of the above standards.

## II. Analysis

### A. Federal Securities Claim

This claim is brought pursuant to § 10(b) of the Security Exchange Act of 1934, 15 U.S.C. § 78j(b) ("the Act"), and Rule 10b-5 of the Securities and Exchange Commission. The facts alleged in support of this claim may be summarized as follows. Plaintiffs performed consulting work for Defendants during a merger. While the consulting work was in progress, Plaintiffs became embroiled in a dispute with Defendants over the compensation, including stock options, that Plaintiffs felt was due for Plaintiffs' efforts. In order to settle the dispute, Defendant Crist made a written settlement offer that was accepted after some modification. As part of the settlement, Plaintiffs were granted options to purchase Defendant Telscape's stock at a fixed price. These options did not take effect until January 1, 1997. Despite the imposition of this delayed effective date, Defendants made the options subject to a time limitation of December 31, 1996. That is, the options expired before

Plaintiffs even acquired the power to exercise them. Defendant Crist had previously told Plaintiff Clapsaddle that the December 31 deadline was not applicable to Plaintiffs' options. Subsequently, however, when Plaintiffs attempted to exercise their options, Defendants refused to honor them, citing the December 31 expiration date. In sum, Plaintiffs allege that Defendants transferred worthless stock options to Plaintiffs in consideration for Plaintiffs' settlement of the dispute over compensation. Plaintiffs also allege that Defendants misled Plaintiffs as to the value of the options, by telling Plaintiffs the earliest date they could exercise the options would be January 1, 1997, and that the options would still be viable as of that date. All along, according to Plaintiffs, Defendants intended to enforce the December 31 expiration date, rendering the options valueless because they could not be exercised before they expired.

Defendants maintain the above allegations fail to state a claim for violation of § 10(b) or Rule 10b-5. Defendants make two arguments in support of this proposition, contending that the above facts do not involve a purchase or sale of a security, and that any misrepresentations made in this case were not made "in connection with" such a purchase or sale. As discussed below, the Court disagrees with Defendants' contentions.

Section 10(b) and Rule 10b-5 make it unlawful to practice fraud or deceit upon a person, "in connection with the purchase or sale of any security." Hunt v. Robinson, 852 F.2d 786, 787 (4th Cir. 1988). Defendants claim there was no purchase or sale of a security in this case, because Plaintiffs never bought any stock. Instead, argue Defendants, this case did not involve a transfer of a security but a mere refusal to transfer securities. See id. (lawsuit based on broken promise to give plaintiff 22% of stock in company stated no more than state-law claims). This case differs from Hunt, however, because in this case there was a transfer of securities -- the stock options granted to

3

Plaintiffs. Stock options are a type of security covered by the Securities Exchange Act. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) (holders of puts, calls, options, and other contractual rights to buy or sell securities are purchasers or sellers of securities); Fry v. UAL Corp., 84 F.3d 936, 938 (7th Cir. 1996) (puts and other stock options are securities within the meaning of the Act); S.E.C. v. American Commodity Exchange, 546 F.2d 1361, 1366 (10th Cir. 1976) (quoting Act and holding that an option is a security as defined in the Act). Furthermore, the fact that Plaintiffs did not pay cash for the options, but received them as consideration for their consulting efforts, does not affect the options' status as securities. See Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 559-60 (2d Cir. 1985). Plaintiffs alleged, in effect, that they performed services for Defendants and were paid for those services, at least in part, with stock options. The options were not merely promised to Plaintiffs but actually changed hands. This case, therefore, clearly involved the purchase or sale of securities.

Defendants next argue that in order to be "in connection with" a sale of a security, the misrepresentation alleged must concern the value of the securities at issue. Other fraud or misrepresentation, while actionable under state law, is not sufficient to state a claim under § 10(b). In support of this argument, Defendants rely primarily on Gurwara v. Lyphomed, Inc., 937 F.2d 380 (7th Cir. 1991), and R.H. Damon & Co. v. Softkey Software Products, 811 F.Supp. 986 (S.D.N.Y. 1993). Both of these cases do hold that a § 10(b) action must be based on a misrepresentation as to the value of a security or securities. To that extent, both cases conflict with the law in the Tenth Circuit. In Richardson v. MacArthur, 451 F.2d 35 (10th Cir. 1971), the appellate court held that the fraud provisions of § 10(b) and Rule 10b-5 are not limited to garden-variety cases of securities fraud involving deceit as to the actual value of securities bought or sold. Id., 451 F.2d at 40. Instead, the

4

court held that all fraudulent schemes in connection with the purchase or sale of securities are prohibited. Id. Plaintiffs have certainly alleged such a fraudulent scheme in this case, by alleging that Defendants tricked them into accepting worthless stock options as part of their compensation for the services they performed.

The Court notes Defendants' argument that Richardson is no longer good law, as it has assertedly been superseded by Blue Chip Stamps. In the Court's view, however, Blue Chip is not inconsistent with either the result or the analysis in Richardson. The plaintiffs in Blue Chip complained that the defendant had deliberately issued overly pessimistic appraisals of the defendant's future prospects and current value, to deter eligible purchasers from buying the defendant's stock. None of the plaintiffs in Blue Chip actually purchased any of the stock. Thus, the plaintiffs were complaining about a transaction that never occurred; no securities or compensation ever changed hands. The Supreme Court held that the plaintiffs had no standing to bring an action under § 10(b) or Rule 10b-5. In Richardson, on the other hand, the plaintiff had paid the defendant $25,000 for the defendant's interest in certain shares of stock, but the defendant schemed to regain ownership of that stock. The Richardson plaintiff, therefore, was a buyer of stock as required by Blue Chip.

As to the Richardson discussion indicating that § 10(b) covers more ground than merely misrepresentations as to the value of the securities bought or sold, Blue Chip says nothing. Another Supreme Court case, however, indicates that Richardson's broader view of the scope of the Act is correct. In Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 9-10 (1971), the Court held that a corporation that had been fraudulently deprived of the proceeds of a sale of treasury bonds was protected by Rule 10b-5, even though the corporation was paid full price for the bonds. There had been no fraud or deception regarding the value of the bonds, but simply a scheme to

5

misappropriate the proceeds of the sale.  Bankers Life, therefore, indicates strongly that the phrase "in connection with the sale or purchase of a security" is not limited to misrepresentations concerning the value of the security that is bought, sold, or otherwise transferred for consideration.  See also, e.g., Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 942-43 (3d Cir. 1985) (while Rule 10b-5 claims typically involve alleged misrepresentations regarding the merits of a particular security, the rule also encompasses misrepresentations beyond those implicating the investment value of a security; citing Bankers Life for proposition that § 10(b) must be read flexibly, not restrictively). In a slightly different context, the Tenth Circuit has also cited Bankers Life for the proposition that Rule 10b-5 must be read flexibly.  Grubb v. Federal Deposit Ins. Corp., 868 F.2d 1151, 1162 (10th Cir. 1989).  The Court will therefore hold that the Richardson holding remains valid, at least as applied to the circumstances alleged in this case.

The Court also notes that, even if the Gurwara rule were applicable to this case and the misrepresentation were required to concern the value of the security exchanged, the Court would find that Plaintiffs have stated a claim under § 10(b) and Rule 10b-5.  As the Court pointed out above, the securities at issue in this case are the options granted to Plaintiffs, not the stock that was the subject of the options.  The alleged misrepresentations in this case went directly to the value of the options, because Defendants allegedly sold Plaintiffs options that were in fact worthless (they were subject to conflicting conditions with respect to expiration and effective date, which made the options expire before they could even take effect), while assuring Plaintiffs the expiration date was not applicable and the options were in fact valuable.  This case, as alleged in the complaint, is not simply an instance of a transfer of an option followed by a subsequent refusal to honor the terms of the option.  Instead, this case allegedly involves deception designed to induce Plaintiffs to accept, as consideration for a

settlement of claims, options valuable on their face but having no true value. Even under the Gurwara standard, therefore, the complaint states a cause of action under the Act. To the extent that this conclusion differs from that reached by the court in Damon, supra, the Court declines to follow the Damon court's analysis.

### B. Adequacy of Allegations in Complaint

Defendants maintain that Plaintiffs' complaint does not sufficiently detail either the misrepresentations made to Plaintiffs or the consequences of those misrepresentations. On the contrary, the complaint is highly specific on both points. Defendants, particularly Defendant Crist, are alleged to have told Plaintiffs the options could not be exercised until January 1, 1997, and that any other restrictions on the options (such as the December 31, 1996 expiration date) did not apply. Defendants are also alleged to have assured Plaintiffs that the options would remain valid for ten years, and could be exercised at any time during that ten-year period. Plaintiffs relied on Defendants' misstatements and omissions of relevant facts, and did not attempt to exercise the options until August, 1997, at which time Plaintiffs were informed that the options had already expired. The Court will hold that Plaintiffs' complaint is more than adequate to state a claim under the PSLRA as well as Rule 9(b), F.R.C.P., and will therefore deny Defendants' motions to dismiss or, in the alternative, for a more definite statement.

### C. Personal Jurisdiction For State-Law Claims

Defendants originally maintained that the Court has no personal jurisdiction over them for purposes of the state-law claims alleged by Plaintiffs, even though the Court does have jurisdiction to address the federal securities claims. In their reply brief, Defendants concede that Plaintiffs "may also be correct" that, if the federal claims remain viable, the Court may exercise personal jurisdiction

over them in connection with any state-law claims that share common facts with the 10b-5 claims. Jurisdictional caselaw supports this concession. See, e.g., IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993) (under doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of fact, the federal district court may assert personal jurisdiction over the parties with respect to the state-law claims even if personal jurisdiction is not otherwise available). Since the Court is not dismissing the federal claims, the Court will apply the pendent-personal-jurisdiction doctrine and need not decide whether Defendants have sufficient minimum contacts with New Mexico to otherwise justify the exercise of personal jurisdiction in this case.

**D.  Texas Statutory Claims**

Defendants maintain that the complaint fails to state a claim with respect to the Texas Blue Sky Law and a Texas statute prohibiting fraud in real estate or stock transactions. Tex. Civ. St. Art. 581-33; Tex. Bus. & Com. Code Ann. § 27.01 (West 1998). Defendants argue, as they did with respect to the federal securities claim, that no stock transaction occurred in this case, because Plaintiffs were never able to exercise the options that had been granted to them. Although Texas case law in this area is sparse, Defendants point to a few cases in support of their position. In Beebe v. Compaq Computer Corp., 940 S.W.2d 304, 307 (Tex. App. 1997), the defendant refused to allow plaintiffs to earn stock options while plaintiffs were on leave of absence; the court held that this employment dispute, concerning the circumstances under which stock options would vest, was not subject to the Blue Sky law. Similarly, in Stephanz v. Laird, 846 S.W.2d 895, 905 (Tex. App. 1993), an employee was fired shortly before his stock options would have begun to vest. The Stephanz court held that the fraud-in-a-stock-transaction statute was not applicable in such a situation. The

8

Stephanz opinion cited another case relied on by Defendants, Stanfield v. O'Boyle, 462 S.W.2d 270, 271 (Tex. 1971), in which the Texas Supreme Court decided that the current fraud statute's predecessor was applicable only when a conveyance of the property has been made, not where there is merely a contract to convey. In Stanfield, the defendant had pledged certain real estate as security for a $50,000 loan, defaulted on the loan, and declared bankruptcy. The real estate was merely collateral for the loan, and not the subject of a sale or other direct transaction.

This case is readily distinguishable from Beebe, Stephanz, and Stanfield. As discussed above, both Beebe and Stephanz were employment cases, involving disputes over the nature and extent to which the plaintiffs were entitled to be compensated for their efforts. There was no controversy about the value of the stock options involved, because the options had never been transferred. Instead, the options were involved in the cases only because there was a dispute over whether the options had been earned, or were fraudulently withheld by the defendants. In this case, on the other hand, the entire controversy concerns misrepresentations as to the value of stock options that had already been conveyed by Defendants to Plaintiffs, and no employment dispute is involved in the case (except tangentially, as part of the settlement that led to the grant of the stock options). Plaintiffs allege they paid valuable consideration to Defendants, in the form of a settlement of the outstanding dispute over compensation owed to them, and received worthless stock options in return. As the Court noted above, even under the Gurwara case, cited in Beebe, these allegations are sufficient to state a securities-fraud claim.

Defendants argue that an option is merely a contract to convey, not an actual conveyance, and that this case is thus squarely within the holding of Stanfield. This argument overlooks the fact that a stock option is itself a valuable item of property that may be bought or sold. Where, as here, an

9

option has been transferred for valuable consideration, a conveyance of property has occurred. This case accordingly does not involve merely a contract to convey. Rather, it concerns a completed transaction in which fraud is adequately alleged with respect to the value of the stock options transferred by one party. Plaintiffs' allegations, therefore, appear to fall squarely within the terms of the fraud-in-a-stock-transaction statute.

The Court acknowledges that Texas case law interpreting these two statutes is sparse, and that further development of the facts may prove that the statutes are not applicable to this case. Alternatively, it may become necessary to decline to exercise the Court's supplemental jurisdiction over these claims, if it is too difficult to predict how the Texas courts would decide the matter. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (pendent jurisdiction is doctrine of discretion, not right; needless decisions of state law should be avoided by federal courts). For the moment, however, the Court will allow Plaintiffs to pursue these causes of action.

### III. Conclusion

Based on the foregoing, the Court will DENY Defendants' motions to dismiss or for a more particular statement.

An Order in accordance with this Memorandum Opinion will issue.

DATED May 28, 1998.

                                                  BRUCE D. BLACK
                                                  UNITED STATES DISTRICT JUDGE